# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

KM ORGANIC FUND, INC., and
CAMMARATA MANAGEMENT,
INC.,

          Plaintiffs,

v.                            Case No. _____

WILLIAM KYLE SMITHSON,

          Defendant.
_____/

## VERIFIED COMPLAINT FOR WRIT OF ATTACHMENT AND INJUNCTIVE RELIEF

Plaintiffs KM Organic Fund, Inc. and Cammarata Management, Inc. (collectively, "Plaintiffs") sue Defendant William Kyle Smithson ("Kyle Smithson), and allege as follows:

## PRELIMINARY STATEMENT

1. Plaintiffs seek to enjoin Kyle Smithson from further dissipating assets that belonged to his late father, the deceased William Herman Smithson, Jr., to preserve the assets as a basis for Plaintiffs to recover on claims they have brought against Kyle Smithson in civil litigation pending in Florida state court. In the causes of action alleged against Kyle Smithson by Plaintiffs in Florida state court, Plaintiffs allege that Kyle Smithson misappropriated Plaintiffs' proprietary trade secrets and confidential information, in violation of both the Florida Uniform Trade Secrets Act and the non-disclosure agreement that Kyle Smithson entered into with Plaintiffs, so that Kyle Smithson could improperly use the information to benefit himself and his company, Virtual Mountain Capital, LLC. A writ of attachment is required because Kyle Smithson has a history of fraudulently dissipating assets, including by misappropriating at least $577,614 from his own father, who suffered from severe dementia before his recent and unfortunate passing, and then, upon information and belief, spending the entirety of the stolen funds in a matter of a few years to

sustain Kyle Smithson's lavish lifestyle. There is no dispute about Kyle Smithson's wrongful conduct, as he has admitted to it in former conservatorship proceedings, such that it is almost certain he would once again fraudulently dispose of any assets he stands to inherit from his father's estate to the detriment of his creditors, the Plaintiffs. Accordingly, Plaintiffs seek a Writ of Attachment, pursuant to Tenn. Code Ann. § 29-6-101, *et seq.*, against the conservatorship funds recently distributed, or very soon to be distributed, to Kyle Smithson, as sole heir at law, from his late father's estate.

## PARTIES

2. Plaintiff KM Organic Fund, Inc. ("KM Organic") is a Florida corporation with its corporate headquarters located in Palm Beach County, Florida.

3. Plaintiff Cammarata Management, Inc. ("CMI") is a Delaware corporation with its corporate headquarters located in Palm Beach County, Florida.

4. Defendant Kyle Smithson is a natural person and, upon information and belief, a citizen and resident of Rutherford County, Tennessee.

## JURISDICTION AND VENUE

5. This action is brought pursuant to Tenn. Code Ann. § 29-6-101, *et seq.*

6. Pursuant to Fed. R. Civ. P. 64, this Court has jurisdiction to impose every remedy available under the laws of the state where the court is located to secure satisfaction of a potential judgment, including the remedy of attachment.

7. This Court has personal jurisdiction over Kyle Smithson in that he is a resident of the state of Tennessee.

8. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 as the parties are of diverse citizenship and the amount in controversy exceeds $75,000.00.

9. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1), as Kyle Smithson resides in this district.

## FACTUAL BACKGROUND

A. **Florida Litigation against Kyle Smithson.**

10. Plaintiffs are presently involved in litigation against Kyle Smithson, the son of the late William Herman Smithson, Jr., in Florida state court. Specifically, Plaintiffs have filed a *Second Amended Counterclaim and Third-Party Complaint* (the "Florida Counterclaim") against Kyle Smithson and others in the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida, in a lawsuit styled *Virtual Mountain Capital, LLC, Plaintiff, vs. Michael Cammarata, KM Organic Fund, Inc., and Strategic Capital Partners Worldwide, LLC, Defendants / KM Organic Fund, Inc. and Cammarata Management, Inc., Counter-Plaintiff and Third Party Plaintiff, vs. Virtual Mountain Capital, LLC, Christopher Villar, a/k/a Christopher Villan, and William Kyle Smithson, Counter-Defendant and Third Party Defendants*, under the case number 2018 CA 013104XXXX MB (AA) (the "Florida Litigation"). *See* the Declaration of Jeffrey K. Joyner, Esq. ("Joyner Decl."), attached hereto as **Exhibit 1**.

11. The Florida Litigation is in the discovery phase. Specifically, the parties have exchanged written discovery and document productions and have commenced fact depositions. *See* Joyner Decl., Ex. 1, ¶ 4.

12. The Florida Counterclaim is an action against Kyle Smithson for permanent injunction, breach of non-disclosure agreements, misappropriation of trade secrets in violation of Florida's Uniform Trade Secrets Act, Fla. Stat. Ch. 688, and conversion. *See Florida Counterclaim. See id.* ¶ 5.

13. The Florida Counterclaim is a just claim, and seeks a judgment against Kyle Smithson for permanent injunctive relief and damages, together with interest, attorneys' fees and costs, in the estimated amount of at least $300,000. *See id.* ¶ 6. Specifically, under Counterclaimants' (*i.e.,* the instant Plaintiffs') first cause of action for breach of non-disclosure agreements, Counterclaimants seek damages and unjust enrichment, as well as attorneys' fees permitted by the non-disclosure agreements. For Counterclaimants' second cause of action for trade secret misappropriation, Counterclaimants' seeks damages for lost profits, as well as costs for the computer forensic investigation necessary to determine the extent of the stolen information and resulting damages, and unjust enrichment. Counterclaimants' may also be entitled to exemplary damages under Fla. Stat. § 68.004(2) and attorneys' fees under § 688.005 for trade secret misappropriation. Finally, Counterclaimants seek the fair market value of the devices and data at issue under the final cause of action for conversion, which also may give rise to punitive damages. Counterclaimants have already incurred approximately $250,000 in attorneys' fees litigating the Florida Counterclaim alone (and over $3 million litigating the Florida Litigation). Moreover, the value of the information accessed by Kyle Smithson, the cost of the forensic investigation, and the integrity of Counterclaimants' computer server and databases compromised by Smithson's actions exceed $15,000. *See* Ex. 1, at Exhibit 1, *Florida Counterclaim,* ¶ 50. Counterclaimants estimate that the value of certain stolen documents alone is at least between $50,000 and $150,000.

B. **History of the Conservatorship of William Herman Smithson, Jr. and Nature of the Property at Issue.**

14. On November 2, 2016, Kyle Smithson's family members filed in the Probate Court for Rutherford County, Tennessee (the "Rutherford County Probate Court") a *Petition for the Appointment of a Conservator for William Herman Smithson, Jr.*, who suffered from dementia,

4

4835-5827-6306
Case 3:20-cv-01016   Document 1   Filed 11/23/20   Page 4 of 15 PageID #: 4

which had resulted in a deterioration of his mental capacities such that he was unable to manage himself or his affairs (the "Conservatorship Action"). The Conservatorship Action alleged that Kyle Smithson (William Herman Smithson, Jr.'s son), in his capacity as his father's attorney-in-fact, had consistently breached his fiduciary duty by misappropriating William Herman Smithson, Jr.'s assets and that urgent action was required to safeguard William Herman Smithson, Jr. and his finances, property, assets and affairs. Specifically, the Conservatorship Action alleged that William Herman Smithson, Jr. had been and was still being taken advantage of by Kyle Smithson, such that his assets had been and were still being rapidly depleted, and that Kyle Smithson's use and sale of his father's assets had not been conducted for the benefit of William Herman Smithson, Jr.

15. Judge B. Jo Atwood (the "Conservator"), against whom no wrongdoing is alleged or implied herein and who acted diligently and successfully in her appointed position, was named Conservator for William Herman Smithson, Jr. by Order of the Rutherford County Probate Court on March 10, 2017.

16. Defendant Kyle Smithson was removed as fiduciary for William Herman Smithson, Jr. by the same Order.

17. On December 11, 2018, Lenelle Smithson, spouse of William Herman Smithson, Jr., died.

18. Upon information and belief, William Herman Smithson, Jr. died intestate in May of 2020, leaving Kyle Smithson as his only heir at law.

19. Pursuant to an Agreed Order dated August 25, 2020, Judge Toby Gilley of the Rutherford County Probate Court ordered the Conservator to work to close the Conservatorship

and to disburse the net proceeds of the conservatorship account to the estate of William Herman Smithson, Jr.

20. As of September 25, 2020, the net proceeds of the conservatorship account totaled $284,753.20 (the "Property")

21. Pursuant to the Order Terminating Conservatorship, the Conservatorship was terminated on October 26, 2020.

22. Kyle Smithson is the sole heir at law and Administrator of his late father's intestate estate, which is pending in the Rutherford County Probate Court.

23. Accordingly, if the Property has not already been disbursed to Kyle Smithson from his late father's estate, the Property will in all likelihood soon be so disbursed to Kyle Smithson.

C. **Kyle Smithson's Fraudulent Disposal of the Property, and Propensity to Further Fraudulently Dispose of the Property.**

24. As outlined in significant detail in the Conservator's *Response to Kyle Smithson's Motions for Declaratory Judgment, to Amend Order and to Direct Clerk*, filed in the Conservatorship Action on May 28, 2019 and attached hereto as **Exhibit 2**,[1] Kyle Smithson has a long history of fraudulently disposing of assets.

25. Specifically, between August 2012 and February 2017, Kyle Smithson fraudulently and wrongfully converted approximately $577,614.41 of William Herman Smithson, Jr.'s assets to his own personal use. *See* Ex. 2 at pp. 1-9.

26. By way of example, in October of 2013, soon after obtaining a power of attorney of William Herman Smithson, Jr., Kyle Smithson opened a Regions Bank account in the name of William Herman Smithson, Jr. and William Kyle Smithson, Custodian. He immediately began to

---

[1] *See* Ex. 2 at Exhibit "I" for a timeline of Kyle Smithson's long history of fraudulently disposing of assets that are not rightfully his.

6

transfer monies from the Custodian account into his own personal account. Between October 31, 2013 and November 15, 2013, Kyle Smithson transferred $14,394.05 into his own personal account. *See* Ex. 2 at pp. 2-3.

27. Kyle Smithson also changed the automatic monthly deposits of his father's Social Security and separate pension plan so the payments would instead be deposited into Kyle Smithson's personal account. *See* Ex. 2 at pp. 2-3.

28. Also, over a 12-month period between 2014 and 2015, Kyle Smithson fraudulently received for his personal use approximately $275,000 from the sale and mortgage of real estate owned by William Herman Smithson, Jr. *See* Ex. 2 at pp. 3-4.

29. Further, between January 1, 2015 and March 29, 2017, Kyle Smithson continued his pattern of dissipation and depletion of his father's assets for his own personal use, spending thousands of dollars of his father's money on his own personal needs, including gym and spa memberships, elective plastic surgery and jewelry for Kyle Smithson's then wife, a divorce settlement payment to Kyle Smithson's former wife, automobiles and boats, golf outings and trips to California, all while William Herman Smithson, Jr.'s account at his nursing facility was seriously past due (Kyle Smithson failed to pay his father's utility bills, and Kyle Smithson moved his father into a less expensive facility that, upon information and belief, did not provide proper care to William Herman Smithson, Jr.).

30. The Conservator also revealed that Kyle Smithson had committed perjury in attempting to cover up his wrongdoing. *See* Ex. 2 at p. 7.

31. Kyle Smithson ultimately admitted that he had misappropriated his father's assets in his *Reply to Response of Temporary Conservator*, filed in the Conservatorship Action on June 28, 2019 and attached hereto as **Exhibit 3**. *See* Ex. 3 at ¶¶ 5 ("Kyle Smithson does not deny that

7

4835-5827-6306
Case 3:20-cv-01016   Document 1   Filed 11/23/20   Page 7 of 15 PageID #: 7

he undertook certain acts that necessitated the appointment of a fiduciary over his father's estate"); 6 ("Kyle Smithson accepts that these actions directly resulted in the determination by this Court that his father needed a Conservator and resulted in the revocation of his authority under the Durable Power of Attorney"); 23 ("Kyle Smithson accepts that he mismanaged his parents…finances prior to April 2017"). Kyle Smithson attempted to explain away his wrongdoing by blaming "his upbringing where both his mother and his father gave him, as an only child, anything he wanted." *See* Ex. 3 at ¶ 9. Kyle Smithson's only response to the Conservator's perjury allegation was that Smithson honestly believed his own lies. *See* Ex. 3 at ¶ 18.

32. The above described actions and admissions make clear that Kyle Smithson has a long history of fraudulently disposing of significant assets for his personal gain and in contravention of his fiduciary duties to manage those assets for the benefit of his father.[2]

33. What is more, as outlined in detail in the Conservator's *Verified Complaint and Petition for Injunctive Relief*, filed in the Conservatorship Action on February 13, 2019 and attached hereto as **Exhibit 4**, it is clear that if given the opportunity, Kyle Smithson is very likely to again fraudulently dispose of the Property just as soon as he is able to get his hands on it.

34. Specifically, as of 2019, Kyle Smithson had long been removed as fiduciary for his father, and on or about January 15, 2019, this Court entered an Order in the Conservatorship action, granting the Conservator the authority to sell the personal and real property of William Herman Smithson, Jr. Despite these facts, in or around February of 2019, Kyle Smithson employed an auctioneer to hold an estate sale to liquidate the entire household and personal property of his father. Kyle Smithson wrongfully and fraudulently advised the auctioneer that he had authority to

---

[2] Upon the Conservator's appointment, the Conservatorship Account of William Herman Smithson, Jr. had a balance of $689.23. Thanks to the Conservator's diligent efforts to recover funds fraudulently and wrongfully misappropriated by Kyle Smithson over a nearly five-year period, as of May 28, 2019, the Conservatorship Account had a balance of $326,148.31.

8

4835-5827-6306
Case 3:20-cv-01016   Document 1   Filed 11/23/20   Page 8 of 15 PageID #: 8

sell all of his father's personal property, despite the fact that this Court's January 2019 Order clearly stated that the sale of William Herman Smithson, Jr.'s personal property would be conducted by the Conservator, and not Kyle Smithson. *See* Ex. 4 at ¶¶ 11-13. Upon information and belief, Kyle Smithson further misrepresented to the auctioneer that his father had passed away, hence warranting an estate sale, despite the facts that his father was alive and that these assets belonged to his father and were subject to the jurisdiction of the Conservatorship.

35. Without any authority whatsoever to sell his father's personal property, Kyle Smithson attempted to fraudulently dispose of same in order to enrich himself to the detriment of William Herman Smithson, Jr., and in all likelihood would have done so, if not for the diligent efforts of the Conservator, which efforts culminated in the Rutherford County Probate Court's entry of a Temporary Restraining Order (the "TRO") on February 13, 2019, "prohibiting and enjoining…Kyle Smithson…from removing, conveying, selling, giving, contracting to sell or otherwise transferring any of the personal property located at 2925 Beasley Road, Chapel Hill, Tennessee and to remit all monies from the "Estate Sale"…to the Conservator for the benefit of the Ward." The TRO from the Conservatorship action is attached hereto as **Exhibit 5**.

36. In light of the above, it is clear that if given the opportunity, Kyle Smithson is very likely to again fraudulently dispose of the Property upon his receipt of the Property via disbursement from his late father's estate, this time in order to defraud Plaintiffs as likely judgment creditors.

37. This likelihood is all the more apparent given the fact that Kyle Smithson has admitted, as recently as June 28, 2019, that he "[did] not have any funds from which to repay the Conservatorship" for the Property he had already fraudulently disposed of. *See* Ex. 3 at ¶ 24. In

9

other words, upon information and belief, Kyle Smithson has already spent all of the approximately $577,614.41 that he misappropriated from his father in a matter of several years.

38. Therefore, the Property which has been or is soon to be disbursed from his late father's estate to Kyle Smithson is likely the sole asset that would be available to satisfy any judgment for monetary relief in the Florida Litigation. Given Kyle Smithson's lengthy history of fraudulently disposing of assets for his personal benefit and to the direct detriment of his own father, there is an almost certainty that Kyle Smithson would fraudulently dispose of the Property to the detriment of his potential creditors, the Plaintiffs.

39. Unless the Court issues a Writ of Attachment against the Property pending resolution of the Florida Litigation, Plaintiffs will suffer immediate and irreparable injury, loss, or damage due to the significant likelihood that Kyle Smithson will fraudulently dispose of the only assets available to satisfy any judgment in that pending litigation.

## **COUNT I**
**(Writ of Attachment Pursuant to Tenn. Code Ann. § 29-6-101, *et seq.*)**

40. The allegations of paragraphs 1 through 39 are hereby incorporated by reference.

41. Plaintiffs have a just demand for a judgment against Kyle Smithson for permanent injunctive relief and damages, together with interest, attorneys' fees and costs, in the estimated amount of at least $300,000.

42. Kyle Smithson has recently acquired, or is about to acquire, an inheritance of approximately $284,753.20 in the form of the net proceeds of his late father's conservatorship account by way of a disbursement from his father's intestate estate, of which Kyle Smithson is sole heir at law (the "Property").

43. Kyle Smithson has fraudulently disposed of, and is about to further fraudulently dispose of the Property.

10

44. Plaintiffs may therefore sue out an attachment against the Property.

## COUNT II
### (Temporary Restraining Order, Preliminary Injunction and Permanent Injunction Pursuant to Tenn. R. Civ. P. 65)

45. The allegations of paragraphs 1 through 44 are hereby incorporated by reference.

46. Plaintiffs have a just demand for a judgment against Kyle Smithson for permanent injunctive relief and damages, together with interest, attorneys' fees and costs, in the estimated amount of at least $300,000.

47. Kyle Smithson has recently acquired, or is about to acquire, an inheritance of approximately $284,753.20 in the form of the net proceeds of his late father's conservatorship account by way of a disbursement from his father's intestate estate, of which Kyle Smithson is sole heir at law (the "Property").

48. Kyle Smithson has fraudulently disposed of, and is about to further fraudulently dispose of the Property.

49. Unless the Court issues a Temporary Restraining Order, Preliminary Injunction and Permanent Injunction against Kyle Smithson pending resolution of the Florida Litigation, Plaintiffs will suffer immediate and irreparable injury, loss, or damage due to the significant likelihood that Kyle Smithson will fraudulently dispose of the only assets available to satisfy any judgment in that pending litigation, thereby rendering himself substantially judgment-proof.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs requests that this Court:

1. Issue a Writ of Attachment against the Property pending resolution of the Florida Litigation upon Plaintiffs' posting of an appropriate bond;

2. Issue a Temporary Injunction, Preliminary Injunction and Permanent Injunction pending resolution of the Florida Litigation as follows:

   a. Enjoining Kyle Smithson and his agents, servants, employees, and attorneys, and all other persons in active concert or participation with any of them, whether acting directly or through any trust, corporation, subsidiary, division, or other device, or any of them from:

      i. Transferring, liquidating, converting, encumbering, pledging, loaning, selling, concealing, dissipating, disbursing, assigning, spending, withdrawing, granting a lien or security interest or other interest in, or otherwise disposing of the Property in the form of credit instruments, real or personal property, accounts, contracts, shares of stock, lists of consumer names, or other assets, or any interest therein, wherever located, including outside the territorial United States, that are:

         1. Owned, controlled, or held by, in whole or in part, for the benefit of, or subject to access by, or belonging to, Kyle Smithson;

         2. In the actual or constructive possession of Kyle Smithson; or

         3. In the actual or constructive possession of, or owned, controlled, or held by, or subject to access by, or belonging to, any other corporation, partnership, trust, or any other entity directly or indirectly owned, managed, or controlled by, or under common control with, Kyle Smithson, including, but not limited to, any assets held by or for Kyle Smithson in any account at any bank or savings and loan institution, or with any credit card processing agent,

12

automated clearing house processor, network transaction processor, bank debit processing agent, customer service agent, commercial mail receiving agency, or mail holding or forwarding company, or any credit union, retirement fund custodian, money market or mutual fund, storage company, trustee, or with any broker-dealer, escrow agent, title company, commodity trading company, precious metal dealer, or other financial institution or depository of any kind, either within or outside the territorial United States;

ii. Opening or causing to be opened any safe deposit boxes, commercial mailboxes, or storage facilities titled in the name of Kyle Smithson, or subject to access by Kyle Smithson or under Kyle Smithson's control, holding the Property;

iii. Incurring liens or encumbrances on the Property in the name of Kyle Smithson or of any corporation, partnership, or other entity directly or indirectly owned, managed, or controlled by Kyle Smithson; or

iv. Transferring the Property for attorney's fees or living expenses.

b. Any financial institution, business entity, or person maintaining or having custody or control of the Property, or any corporation, partnership, or other entity directly or indirectly owned, managed, or controlled by, or under common control with Kyle Smithson, shall:

i. Hold and retain within its control and prohibit the withdrawal, removal, assignment, transfer, pledge, hypothecation, encumbrance, disbursement,

13

4835-5827-6306
Case 3:20-cv-01016   Document 1   Filed 11/23/20   Page 13 of 15 PageID #: 13

dissipation, conversion, sale, liquidation, or other disposal of the Property held by, or under its control:

    1. On behalf of, or for the benefit of, Kyle Smithson;

    2. In any account maintained in the name of, or for the benefit of, or subject to withdrawal by, Kyle Smithson; and

    3. That are subject to access or use by, or under the signatory power of, Kyle Smithson;

ii. Deny Kyle Smithson access to any safe deposit boxes or storage facilities holding the Property that are either:

    1. Titled in the name, individually or jointly, of Kyle Smithson; or

    2. Subject to access by Kyle Smithson.

c. Kyle Smithson shall provide Plaintiff's a sworn statement setting forth:

    i. The identification number of each account or asset titled in the name, individually or jointly, of any Kyle Smithson, holding the Property, held on behalf of, or for the benefit of, Kyle Smithson, including all trust accounts managed on behalf of Kyle Smithson or subject to Kyle Smithson's control;

    ii. The balance of each such account, or a description of the nature and value of such asset;

    iii. The identification and location of any safe deposit box, commercial mailbox, or storage facility holding the Property that is either titled in the name, individually or jointly, of Kyle Smithson, or is otherwise subject to access or control by Kyle Smithson, whether in whole or in part; and

3. Award Plaintiffs such other relief as this Court may deem just and proper.

Dated:  November 23, 2020.

> Respectfully submitted,
>
> */s/ Christopher E. Thorsen*
> Christopher E. Thorsen, No. 21049
> Charles C. McLaurin, No. 34352
> BAKER, DONELSON, BEARMAN,
> CALDWELL & BERKOWITZ, P.C.
> 211 Commerce Street, Suite 800
> Nashville, Tennessee 37201
> (615) 726-5586 (T)
> cthorsen@bakerdonelson.com
> cmclaurin@bakerdonelson.com
>
> *Counsel for Plaintiffs*